**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| LISA COOK, | ) | No. ED CV 12-184-PLA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 10, 2012, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 6, 2012, and March 12, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 22, 2012, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 24, 1967.  [Administrative Record ("AR") at 57.]  She has a tenth grade education [AR at 130], and past relevant work experience as a hostess, a labeler, and a housekeeper.  [AR at 36, 45, 131.]

Plaintiff filed an application for Disability Insurance Benefits on January 25, 2010, and protectively filed an application for Supplemental Security Income payments on January 28, 2010, alleging that she has been unable to work since January 31, 2005, due to seizures, headaches, leg pain, hearing voices, and paranoia.  [AR at 57-58, 62-66, 102-12, 156-61.]  After her applications were denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 62-66, 69-71.]  A hearing was held on April 1, 2011, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 32-49.]  A vocational expert also testified. [AR at 44-46.] On June 9, 2011, the ALJ determined that plaintiff was not disabled. [AR at 17-22.] On December 9, 2011, the Appeals Council denied plaintiff's request for review.  [AR at 1-5, 9.]  This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

1    Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2    must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

3    53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

4

5                                              IV.

6                          **THE EVALUATION OF DISABILITY**

7           Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8    to engage in any substantial gainful activity owing to a physical or mental impairment that is

9    expected to result in death or which has lasted or is expected to last for a continuous period of at

10   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

11

12   **A.      THE FIVE-STEP EVALUATION PROCESS**

13          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

15   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

16   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

17   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

18   substantial gainful activity, the second step requires the Commissioner to determine whether the

19   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

20   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

21   If the claimant has a "severe" impairment or combination of impairments, the third step requires

22   the Commissioner to determine whether the impairment or combination of impairments meets or

23   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

24   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

25   If the claimant's impairment or combination of impairments does not meet or equal an impairment

26   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

27   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

28   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

                                                3

1    perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a

2    <u>prima</u> <u>facie</u> case of disability is established.   The Commissioner then bears the burden of

3    establishing that the claimant is not disabled, because she can perform other substantial gainful

4    work available in the national economy.  The determination of this issue comprises the fifth and

5    final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828

6    n.5; <u>Drouin</u>, 966 F.2d at 1257.

7

8    **B.**     **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

10   gainful activity since January 31, 2005, her alleged disability onset date. [AR at 19.][1]  At step two,

11   the ALJ concluded that plaintiff has the severe impairment of schizophrenia, undifferentiated type.

12   [<u>Id.</u>]  At step three, the ALJ determined that plaintiff does not have an impairment or combination

13   of impairments that meets or medically equals any of the impairments in the Listing.  [<u>Id.</u>]  The ALJ

14   further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range

15   of work at all exertional levels but with the following nonexertional limitation: "unable to work

16   around the general public."  [AR at 20.]  At step four, the ALJ concluded that plaintiff is capable

17   of performing her past relevant work as a labeler.  [AR at 22.]  Accordingly, the ALJ determined

18   that plaintiff has not been disabled at any time from January 31, 2005, through June 9, 2011, the

19   date of the decision.  [<u>Id.</u>]

20   /

21   /

22   /

23   /

24   /

25   _____

26    [1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2006.  [AR at 19.]

27

28    [2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>See</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly discounted plaintiff's credibility. [Joint Stipulation ("JS") at 4-11, 16.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In a Function Report plaintiff completed on February 4, 2010, plaintiff stated that she can perform chores to the extent that she "pick[s] up after [she] use[s] things" and "do[es] laundry." [AR at 143-50.]  Plaintiff also stated that she goes out to the store once or twice a week for "maybe 20 min[utes]" at a time to buy food and "cleaning stuff."  [See AR at 146.]  When asked whether she has problems getting along with others, plaintiff stated "I get nerves [sic]," and when asked

5

1  how well she handles stress, she responded: "I cant[']t[;] that makes me have a seizure.  Hopefully

2  I had took [sic] my medicine."  [AR at 148-49.]  Plaintiff represented that she gets "paranoid." [AR

3  at 149.]  Also on February 4, 2010, plaintiff partially completed a Third Party Function Report in

4  which she made several additional statements about herself, including that she "cook[s]" insofar

5  as she prepares soup and sandwiches for herself daily.  [AR at 135-42.]

6      In a February 6, 2010, Seizure Questionnaire, plaintiff stated that she has had seizures "[a]ll

7  [her] life," but that the frequency of her seizures is "not often."  [AR at 151-53.]  She also stated

8  that since 2003, she has been taking Gabapentin for her seizures, that her dosage of 800mg,

9  600mg, and 300mg has been the same for the last seven years, and that this medication controls

10  her seizures "very well."  [AR at 152.]  Plaintiff represented that her last three seizures occurred

11  in 2004, 2009, and 2010.[3]  [AR at 151.]

12      At her April 1, 2011, hearing before the ALJ, plaintiff testified that she hears voices every

13  day.  [AR at 41.]  Plaintiff testified that hearing voices interferes with her ability to work because

14  while she is working, the voices "start talking and saying that people are staring at [her]," and then

15  she will "look around[,] ... see people looking at [her], and ... get really paranoid."  [AR at 37.]

16  Plaintiff further testified that the voices tell her to watch out for other people, and that she hears

17  them "a lot more" when she is at home alone.  [AR at 42.]  Plaintiff stated that she lives with her

18  grandmother, and that on a typical day, she "[s]tay[s] inside the house" and does not leave

19  because she "get[s] paranoid when [she is] around a lot of people."  [AR at 38, 40.]  Plaintiff also

20  represented that "[e]very now and then" she sees flashes or shadows, but "not that [often]."  [AR

21  at 37.]  When the ALJ asked plaintiff whether she takes any medication "for these issues," plaintiff

22  responded that she takes Risperidone and Seroquel, but represented that her medication does

23  not take the voices away.  [AR at 37, 41.]  Plaintiff testified that she does not go to the grocery

24  store, and is not able to cook because of arthritis in her right hand, but can "make soup[]."  [AR

27      [3]  One of the dates plaintiff wrote on the Questionnaire was "20010," which the Court
28  interprets as 2010.  [See AR at 151.]

6

1   at 38.]  As for her seizures, plaintiff stated that the last time she had a seizure was the month

2   before the hearing.  [AR at 40.]

3         At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically

4   determinable impairments could reasonably be expected to cause the alleged symptoms."  [AR

5   at 20.]  The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity,

6   persistence and limiting effects of these symptoms are not credible to the extent they are

7   inconsistent with [the ALJ's RFC findings for plaintiff]."  [Id.]  Thus, at step two, as the record

8   contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and

9   convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter, 504 F.3d

10   at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

11   credible and what evidence undermines the claimant's complaints."  Reddick, 157 F.3d at 722

12   (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

13         The ALJ found plaintiff's subjective symptom testimony "less than credible" because she

14   found that: (1) plaintiff's seizures are "well[-]controlled with medication"; (2) plaintiff made

15   inconsistent statements about her daily activities; and (3) there is "no objective evidence in support

16   of the degree of mental symptoms that [plaintiff] has alleged."  [AR at 20-21.][5]  The Court finds that

17   while not all of the reasons the ALJ gave for discounting plaintiff's subjective symptom testimony

18   are legally adequate, two of the reasons are supported by substantial evidence.  See Fair v.

19   Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

20         First, the ALJ found that plaintiff's seizures do not constitute "a severe impairment for the

21   purpose of [the ALJ's] decision" because she found plaintiff's seizures to be "well[-]controlled with

22   medication" and that "the objective medical evidence provides no documentation of any current

23

24      [4]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
plaintiff was doing so.  The ALJ did, however, note that in a March 15, 2010, Complete Psychiatric

25   Evaluation, an examining psychiatrist "suggested that [plaintiff] was a 'questionably reliable
historian.'"  [See AR at 21, 240-43.]

26
     [5]   The Court notes that while the ALJ discounted plaintiff's subjective symptom testimony, she

27   nevertheless gave plaintiff "the benefit of the doubt" with regard to plaintiff's subjective complaints
of paranoia and hearing voices by including in plaintiff's RFC a restriction from working around the

28   general public.  [See AR at 21-22.]

seizure activity." [AR at 20.]  In support of the first of these two findings, the ALJ cited plaintiff's February 6, 2010, Seizure Questionnaire, noting that plaintiff stated therein that she has been on the same dosage of Gabapentin for the last seven years and that her medication controls her seizures "very well." [See AR at 20, 152.]  In addition, in finding that there is no objective medical evidence of "current seizure activity," the ALJ relied on a March 11, 2010, report of a neurological examination performed on plaintiff.  [See AR at 20, 235-38.]  During that examination, the physician found that "[s]ensation is intact to light touch, pinprick, temperature and vibration throughout upper and lower extremities"; "[f]inger-nose-finger, rapid alternating movements, and rhythmic-toe-tapping are performed well bilaterally without evidence of ataxia or dysmetria"; and "[plaintiff] stands and ambulates in a very stable manner." [See AR at 237.]  The report also indicates that plaintiff represented to the physician that she had been "seizure free for over a year." [AR at 235.]  The examining physician concluded that plaintiff can "occasionally lift 100 pounds and frequently lift 50 pounds"; can "stand, sit, and walk for 6 hours of an 8-hour workday with normal breaks"; and "no longer has environmental restrictions with regard to heights and machinery" because she had been seizure-free for over a year.  [AR at 237-38.]  The ALJ noted in her decision that the neurological examination was "unremarkable, with no significant findings on coordination, sensory, and gait testing," that plaintiff represented to the physician that she had been seizure-free for over a year, and that the physician did not find that plaintiff has any environmental restrictions.  [AR at 20.]  Plaintiff's concession that her medication is effective in controlling her seizures, and the ALJ's finding that there is no objective evidence of currently debilitating seizures, constitute clear and convincing reasons to reject plaintiff's allegation that she is unable to work due to her seizures.  See Lingenfelter, 504 F.3d at 1036.

Next, the ALJ employed ordinary techniques of credibility determination, supported by substantial evidence in the record (see Fair, 885 F.2d at 604 n.5), to conclude that there were "[i]nconsistencies in the record" with regard to plaintiff's statements concerning her daily activities. [AR at 21.]  Specifically, the ALJ cited plaintiff's February 4, 2010, Function Reports, in which plaintiff stated that she prepares soup and sandwiches for herself daily, does laundry, and goes shopping for food and cleaning supplies once to twice a week.  [AR at 21, 137, 145-46.]  The ALJ

8

1 found that these statements were "[i]n direct contradiction" with plaintiff's representations to an

2 examining psychiatrist on March 15, 2010 -- just a little over one month later -- that plaintiff is

3 unable to cook, perform household chores, run errands, and shop "because her mind wanders."

4 [AR at 21, 241.] Substantial evidence supports the ALJ's discounting of plaintiff's credibility based

5 on these internal inconsistencies in plaintiff's statements concerning her daily activities.  See

6 Thomas, 278 F.3d at 958-59; see also Fair, 885 F.2d at 604 n.5.

7      Finally, the ALJ concluded that there is "no objective evidence in support of the degree of

8 mental symptoms that [plaintiff] has alleged." [AR at 21.]  While not entirely accurate,[6] the Court

9 has nevertheless determined that substantial evidence supports the ALJ's first and second

10 reasons to discount plaintiff's credibility concerning the degree to which her symptoms limit her

11 ability to work.  It is not the Court's role to second-guess the ALJ's credibility determination.  See

12 Fair, 885 F.2d at 604 ("Where, as here, the ALJ has made specific findings justifying a decision

13 to disbelieve an allegation [concerning a subjective symptom], and those findings are supported

14 by substantial evidence in the record, our role is not to second-guess that decision."); Rollins v.

15 Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

16      The ALJ's first and second findings for rejecting plaintiff's subjective allegations were

17 supported by the record, and must be upheld.  See Green, 803 F.2d at 532.  Remand is not

18 warranted.

19 /

20 /

21

22     [6]   The Court notes, for instance, that plaintiff reported hearing voices and other auditory

23 hallucinations fairly consistently between March 2010 and December 2010 [see AR at 240, 274-75, 281, 289]; that treating and examining sources diagnosed her with schizophrenia, psychotic

24 disorder, and antisocial personality disorder between February 2010 and December 2010 [see AR at 242, 271, 279, 286]; and that her treating sources prescribed her with Risperdal/Risperidone,

25 Seroquel, and Abilify between March 2010 and March 2011.  [See AR at 173-74, 274-75, 277-79.]

26 Risperdal (whose generic name is Risperidone), Seroquel, and Abilify are all used to treat "mental illnesses including schizophrenia" or the symptoms of schizophrenia.  See

27 h t t p : / / w w w . n c b i . n l m . n i h . g o v / p u b m e d h e a l t h / P M H 0 0 0 0 9 4 4 / ;
h t t p : / / w w w . n c b i . n l m . n i h . g o v / p u b m e d h e a l t h / P M H 0 0 0 1 0 3 0 / ;

28 http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000221/.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:   October 31, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE